IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| STICHTING MAYFLOWER MOUNTAIN FONDS, STICHTING MAYFLOWER RECREATIONAL FONDS, and MAYFINANCE, C.V., Netherlands associations,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. WEST NEW VECTOR GROUP, INC., and WASATCH UTAH RSA NO. 2, limited partnership,<br><br>Defendants. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br><br><br><br><br><br>Case No. 2:05-cv-00001 |

Before the court are cross motions for summary judgment in a case arising out of a dispute regarding the terms of a lease agreement between plaintiffs Stichting Mayflower Mountain Fonds, Stichting Mayflower Recreational Fonds, and Mayfinance, C.V., as landlord ("Landlord"), and defendants Wasatch Utah RSA No. 2 and U.S. West New Vector Group, Inc., as tenant ("Tenant").

At issue is the proper interpretation of a formula contained in the lease pursuant to which the rental rate for an optional five year renewal period at the end of the initial term of the lease was to be calculated, more specifically the interpretation of the term "income" and the phrase

"initial year of this lease" within the formula.  The defendants have moved for summary judgment, asking this court to find as a matter of law that the term "income" means net income, or receipts less expenses attributable to their generation, and that "initial year of this lease" refers to the year 1992.  The plaintiffs have likewise moved for partial summary judgment on the interpretation of the term "income," claiming that "income" means total receipts, or revenue, and does not contemplate the deduction of expenses.  However, the plaintiffs have not moved the court with regard to the interpretation of the phrase "initial year of this lease."  As explained below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment (#25) and DENIES Plaintiff's Motion for Partial Summary Judgment (#27).

## FACTS

In October of 1990, Landlord and Tenant entered into a lease agreement (the "Lease") whereby Landlord leased to Tenant a certain parcel of property approximately 2,500 square feet in size located on Bald Mountain in Wasatch County, Utah (the "Property"), for the purpose of constructing and operating a cellular telephone communications antenna.[1]  The initial term of the Lease was for approximately eight years, ending on December 31, 1998 (the "Initial Term"), with an option to extend the Lease for an additional five year period (the "Extended Term").[2]  Rent during the Initial Term was to begin at $12,000 per year and increase annually in proportion to the increase in the Consumer Price Index.[3]

---

[1] Compl. Ex. A. ¶¶ 1, 5 (Docket No. 1).

[2] *Id.* at ¶¶ 2, 4.

[3] *Id.* at ¶¶ 1, 3.

Paragraph 4 of the Lease provides that if the option to extend the Lease is exercised, the annual rent payment to be made by Tenant to Landlord for the first year of the Extended Term would be calculated as follows:

> For purposes of establishing the base rent for the second term, [Tenant] shall provide [Landlord] annually during the term hereof an audited statement of income derived by [Tenant] from service provided in the Services Areas shown on Exhibit "B", as submitted to the Utah Public Utilities Commission. The degree by which such income increases year to year following the first year of the first term hereof shall be noted on such statements. *At the outset of any renewal term hereunder, the rental paid during the last year of the preceding term shall be increased in the degree by which [Tenant's] said income in such year exceeds [Tenant's] said income in the initial year of this lease.*[4]

Similar to the Initial Term, the annual rent payment during the Extended Term is then increased each year in proportion to the percentage increase in the Consumer Price Index.[5]

The parties extended the Lease according to this option, with the five year Extended Term beginning on January 1, 1999.[6] During the Extended Term, Tenant tendered annual payments of rent to Landlord, which payments Landlord rejected because, in its view, Tenant miscalculated the proper payment amount.[7] The primary dispute between the parties centers on the interpretation of the term "income" and the phrase "initial year of this lease" as found in Paragraph 4 for calculating the annual rent payments due to Landlord during the Extended Term.

---

[4] *Id.* at ¶ 4 (emphasis added).

[5] *Id.* at ¶¶ 3, 4.

[6] Def.'s Mem. Supp. Ex. B. ¶¶ 67:3-8  (Docket No. 26).

[7] Def.'s Mem. Supp. ¶ 16 (Docket No. 26); Pl.'s Resp. ¶ 16  (Docket No. 30).

Landlord argues that "income" should be interpreted as gross income, or revenue, and that the "initial year of this lease" is 1990. Tenant argues that "income" should be interpreted as net income, or revenue less costs and expenses, and that the "initial year of this lease" is 1992. Based upon these differing interpretations Landlord and Tenant have widely divergent calculations as to the amount of rent now due, approximately $2,200,000[8] and $305,978,[9] respectively.

## STANDARD OF REVIEW

Summary judgment is appropriate only where there are no disputed material issues of fact, and where one party is entitled to judgment as a matter of law.[10] To apply this standard, the court must view the evidence in the light most favorable to the nonmoving party.[11]

## DISCUSSION

This case requires the court to determine the meaning of the provision in Paragraph 4 of the Lease pursuant to which the base rent for the Extended Term is determined. Pursuant to Utah law, the court interprets real property leases using the principles of contract interpretation.[12] A

---

[8] Compl. 4 (Docket No. 1).

[9] Def.'s Mem. Supp. ¶ 17 (Docket No. 26).

[10] Fed. R. Civ. Pro. 56(c).

[11] *Green v. New Mexico*, 420 F.3d 1189, 1192 (10th Cir. 2005).

[12] *See, e.g.*, *Edwards & Daniels Architects, Inc. v. Farmers' Props., Inc.*, 865 P.2d 1382, 1385 (Utah Ct. App. 1993).

contract must be interpreted according to the intentions of the parties, which intentions the court may determine as a matter of law where the language of the contract is unambiguous.[13]

"A contract provision is ambiguous if it is capable of more than one reasonable interpretation because of 'uncertain meaning of terms, missing terms, or other facial deficiencies.'"[14] However, ambiguity is not established simply because the parties differ in their respective interpretations.[15] Rather, "[t]o demonstrate ambiguity, the contrary positions of the parties must each be tenable."[16] Whether the language of a contract is ambiguous is likewise a question of law.[17] Although traditionally limited to the language of the contract itself, a court applying Utah law may consider any relevant evidence in determining whether a contract provision is capable of more than one reasonable interpretation and is therefore ambiguous.[18]

The provision in question, found in Paragraph 4 of the Lease, provides a formula whereby the amount of annual rent to be paid by Tenant to Landlord during the Extended Term is calculated upon the exercise of the option to extend the Lease. According to this formula, the rent for the first year of the Extended Term was to equal the amount of the rent payment due in

---

[13] *See Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 18, 48 P.3d 918, 925; *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991).

[14] *Winegar*, 813 P.2d at 108 (quoting *Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983)).

[15] *Id.* at 109.

[16] *Plateau Mining Co. v. Utah Div. of State Lands and Forestry*, 802 P.2d 720, 725 (Utah 1990).

[17] *Wineger*, 813 P.2d at 108.

[18] *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995).

the last year of the Initial Term "increased in the degree by which [Tenant's] said income in such year exceeds [Tenant's] said income in the initial year of this lease."  This amount is then increased annually throughout the Extended Term in proportion to increases in the Consumer Price Index.  The formula's language presents two issues upon which the parties offer differing interpretations: (1) the meaning of the term "income," and (2) the year to which the phrase "initial year of this lease" refers.

### *"Income"*

Tenant asserts that the term "income" as found in Paragraph 4 of the Lease means receipts of money derived from the operation of cellular telephone equipment on the Property less those expenses attributable to the production of such receipts.  Landlord equates the term "income" with the concept of revenue, or all receipts, without deducting the costs of operation.  The court agrees with Tenant.  When considering the entirety of the Lease, and more particularly Paragraph 4, the term "income" must be interpreted to take into account those expenses properly attributable to Tenant's cellular telephone antenna operations on the Property.

As demonstrated by the language of Paragraph 4, the parties intended to base the amount of the rent payments in the Extended Term on the success or profitability of Tenant's operation of a cellular telephone antenna on the Property during the Initial Term: "For purposes of establishing the base rent for the [Extended Term], [Tenant] shall provide [Landlord] annually during the term [of the Lease] an audited statement of income derived by [Tenant] from service."[19]  Paragraph 4 specifically requires that these annual statements of income indicate the

---

[19] Compl Ex. A. ¶ 4 (Docket No. 1).

"degree by which such income increases year to year."[20]  Black's Law Dictionary defines an "income statement" as "[a] statement of all the revenues, expenses, gains, and losses that a business incurred during a given period. — also termed *statement of income*; *profit-and-loss statement*; *earnings report*."[21]  Thus, the annual statements of income upon which the base rent for the Extended term is "established" are essentially measures of profitability, which properly account for the costs of doing business.

Moreover, a profitability-based formula is desirable to both lessor and lessee.  In electing a shorter initial term with an option to renew, the lessee maintains a potential exit from a losing deal.  In exchange for forgoing a longer term with its guaranteed stream of revenue, the lessor is entitled to a higher rental rate in the event that the lessee's operations are profitable.  Here, Landlord and Tenant might have selected a formula based upon the rate of inflation as they did when considering the annual increase in the rental rate for each year during the Initial Term.  Instead, they elected to base the renewal rent calculation on measures of Tenant's profitability in relation to its provision of cellular telephone service on the Property.

Thus, by requiring that Tenant provide a "statement of income" each year during the Initial Term of the lease "for the purpose of establishing the base rent" for the Extended Term and by requiring that such statements indicate the increase in income from year to year, the parties clearly intended to base the rent calculation formula on Tenant's profitability, which of necessity requires the consideration of costs and expenses.  Each time the term "income" is used

---

[20] *Id.*

[21] *Black's Law Dictionary* 768 (7th ed. 1999).

throughout the remainder of Paragraph 4, it is qualified by either the word "such" or the word "said," clearly indicating that "income" refers to the "income" found on the annual "statement of income." Thus, the term "income" as used in the formula, and throughout Paragraph 4, must signal a measure of profitability that properly accounts for the costs associated with the money generated by Tenant's cellular telephone antenna operations on the Property.

To conclude that the formula is tied solely to revenues without taking operational costs into consideration is illogical and would lead to skewed results. Such would not measure Tenant's profitability and thus its ability to pay a higher rental rate during the Extended Term, but rather would indicate solely the percentage increase in money receipts divorced from attributable costs. For example, at the time of contracting it was entirely possible that Tenant would enjoy significantly increasing revenues in each year of the Initial Term, yet endure costs each year that would exceed such revenues. In this scenario, the rent for the Extended Term would increase significantly under Landlord's interpretation of Paragraph 4 even though Tenant actually endured losses throughout the Initial Term. Had the parties intended this result, they surely would have carefully indicated as much by using the term "revenue," "receipts," or "gross income," instead of "income." Therefore, the court finds that Landlord's proffered interpretation of "income" is untenable.

Accordingly, the court finds as a matter of law that the term "income," as found in the rent calculation formula of Paragraph 4, unambiguously requires the calculation of gross receipts from Tenant's cellular telephone antenna operations on the Property less costs properly attributable to generating those receipts. Therefore, the court GRANTS Tenant's Motion for

Summary Judgment with respect to the proper interpretation of the term "income" and DENIES Landlord's Motion for Partial Summary Judgment.

### *"Initial Year of This Lease"*

The formula in Paragraph 4 bases the rent payment calculation on the percentage increase in Tenant's income when comparing the "initial year of this lease" and the "last year of the preceding term." The parties agree that the "last year of the preceding term" is 1998. However, despite its agreement that the term of the Lease began in October of 1990, Tenant asks this court to find, as a matter of law, that the phrase "initial year of this lease" unambiguously means the year 1992.

Tenant argues that the "initial year of this lease" should be interpreted as the first year in which Tenant had "income," which was 1992. This is so, according to Tenant, because the formula is based on a comparison of the amount of Tenant's income in the "last year" and the "initial year," which comparison requires that Tenant have income in those years.

Tenant also looks to language in Paragraph 4 that requires Tenant to indicate on the annual financial statements due to Landlord, "[t]he degree by which such income increases year to year following the first year of the first term," with, according to Tenant, 1991 being the first year of the first term and 1992 being the "following" year. From this Tenant argues that the obligation to report the "year to year" increase in the required financial statements did not begin until 1992. According to Tenant, this assertion, when combined with the parties' apparent intent to use the required financial statements in calculating the rent for the Extended Term, indicates

that the parties intended 1992 to be the year used to determine the rental rate, or the "initial year of this lease."

The court cannot find that the language "initial year of this lease" unambiguously means the year 1992 when the term of the Lease began in 1990. Although the court recognizes that using a negative number in the formula may render the calculation unmeaningful, it does not follow that solely because Tenant endured a net loss in 1990 and 1991 that the "initial year of this lease" can be reasonably interpreted to refer only to the year 1992. With regard to the second argument outlined above, Tenant has essentially taken the position that "[t]he first year of the first eight-year term ending December 31, 1998 would be 1991"[22] in order to reach its conclusion that the "initial year of this lease" is 1992. The court remains unpersuaded.

At best, Tenant has introduced evidence to show that the phrase "initial year of this lease" is ambiguous. Even assuming that this is the case, where the court finds that a provision is ambiguous, the intent of the parties with regard to such ambiguous provision is a question for the trier of fact and is not an appropriate matter for summary judgment. Accordingly, the court DENIES Tenant's Motion for Summary Judgment with regard to the interpretation of the phrase "initial year of this lease" as found in Paragraph 4.

## CONCLUSION

For the foregoing reasons and as outlined above, the court hereby GRANTS IN PART and DENIES IN PART the Defendant's Motion for Summary Judgment (#25) and DENIES the Plaintiff's Motion for Partial Summary Judgment (#27).

---

[22] Def.'s Mem. Supp. 11 (Docket No. 26).

SO ORDERED.

DATED this 5th day of October, 2007.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge